AMUNDSON, Justice
(dissenting).
[¶ 23.] I respectfully dissent.
[¶ 24.] Although the Burger Court appears to have been opening the door for random inspections of highly regulated businesses, such roving searches should not be justified in the situation at hand. First, I do not believe the Burger requirement, that a statute permitting warrant-less searches of regulated business must carefully limit the discretion of inspectors in “time, place and scope[,]” has been met. Burger, 482 U.S. at 703, 107 S.Ct. at 2644, 96 L.Ed.2d 601. Neither SDCL 46-28-66 nor SDCL 32-2-7 limits the time, place or scope of the random search that took place in this case. In fact, the conference opinion points out that Swets, of his own volition, decided to focus his attention on commercial vehicles. He then, at random, stopped Rechtenbach’s truck to check his logbook. The search escalated from a random logbook check, into a search of Re-chtenbach’s person, and ultimately resulted in a fishing expedition for drugs. This should not be how we follow the United States Supreme Court’s call for limiting “the discretion of the inspectors ... ‘carefully in time, place and scope.’ ” See id.
[¶ 25.] Additionally, even if one agrees that the Fourth Amendment of the federal constitution permits these roving searches pursuant to Burger, we are clearly given the right to grant greater protections under our state constitution.
There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution. Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). This court is the final authority on interpretation and enforcement of the South Dakota Constitution. We have always assumed the independent nature of our state constitution regardless of any similarity between the language of the document and the federal constitution.
State v. Opperman, 247 N.W.2d 673, 674 (S.D.1976). In Opperman we were addressing the same constitutional issue— searches and seizures. Despite the similar language in the state and federal constitution regarding this important issue, we expounded beyond the bounds of the federal protections to ensure our state citizens are protected from unreasonable searches and seizures.
Admittedly the language of Article VI, § 11 is almost identical to that found in the Fourth Amendment; however, we have the right to construe our state constitutional provision in accordance with what we conceive to be its plain meaning. We find that logic and sound regard for the purposes of the protection afforded by [South Dakota Constitution], Art. VI, § 11 warrant a higher standard of protection for the individual in this instance than the United States Supreme Court found necessary under the Fourth Amendment.
Id. at 674-75.
[¶ 26.] In People v. Scott, 79 N.Y.2d 474, 583 N.Y.S.2d 920, 593 N.E.2d 1328, *296 1339 (1992), the New York Court of Appeals chose to surpass the holding in Burger and provide more protection under the state constitution than was provided by the federal constitution. In Scott the court held that the “ ‘administrative search’ exception to the Fourth Amendment’s probable cause and warrant requirement cannot be invoked where ... the search is ‘undertaken solely to uncover evidence of criminality’ and the underlying regulatory scheme is ‘in reality, designed simply to give the police an expedient means of enforcing penal sanctions.’ ” Id at 1343. The court further articulated its purpose in providing broader search and seizure protection:
Obviously, the government’s interest in law enforcement is always, by definition, ‘substantial,’ and tools such as unannounced general inspections, without judicial supervision or regulatory accountability, are always helpful in detecting and deterring crime. If these were the only criteria for determining when citizens’ privacy rights may be curtailed there would thus be few, if any, situations in which the protections of [our state constitutional article on unreasonable search and seizure] would operate. Indeed, the very purpose of including such protections in our [c]onstitution was to provide a counterbalancing check on what may be-done to individual citizens in the name of governmental goals.
[[Image here]]
Our responsibility in the judicial branch is not to respond to these temporary crises or to shape the law so as to advance the goals of law enforcement, but rather to stand as a fixed citadel for constitutional rights, safeguarding them against those who would dismantle our system of ordered liberty in favor of a system of wee-kept order alone. As has recently been observed, the present crisis will, undoubtedly, abate but the precedents we create now will long endure .... [I]t suffices to observe, as Benjamin Franklin did some 200 years ago, that ‘those who give up essential liberty to purchase a little temporary safety deserve neither liberty nor safety-’
Id. at 1344-45.
[¶ 27.] Based on the above reasoning, I would affirm the trial court. The rationale of the majority authorizes the Legislature to put into effect a generalized wholesale exception to constitutional rights established by our forefathers. This is a case where a random stop was for the sole purpose of resolving the query, “What should I do today to give ‘Rufus, the drug dog’ some exercise?”
[¶ 28.] Therefore, I dissent.
[¶ 29.] SABERS, Justice, joins this dissent.